Argued January 25, affirmed May 16, petition for rehearing
denied June 13, 1956

## HOTCHKISS ET AL v. UNION HIGH SCHOOL DISTRICT No. 2 ET AL

297 P. 2d 306

*S. J. Bischoff,* Portland, argued the cause for appellants. With him on the briefs was Pat H. Donegan, Burns.

*Thomas H. Tongue, III,* Portland, argued the cause for respondents. With him on the brief were Edwin D. Hicks, Portland, and James M. Burns, Burns.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, LATOURETTE and PERRY, Justices.

LUSK, J.

This is a taxpayer's suit brought to enjoin the District School Board of Union High School District No. 2, Harney County, Oregon, from selling an issue of bonds and spending any funds of the district for the acquisition of a new high school site or for the erection of a school building thereon.

The circuit court sustained a demurrer to the complaint and, the plaintiffs declining to amend, a decree of dismissal was entered from which this appeal was taken.

The sole question for decision is whether, after legal authorization of a bond issue for that purpose, the district school board of a union high school district may select and acquire a new site and erect a high school building thereon without the affirmative vote of two-thirds of the legal voters of the district voting in an election called to vote upon the question of selection of the new site. It appears from the complaint that an election was duly held on March 5, 1955, at which the following questions were submitted to the voters of the district: (1) The selection and acquisition by the district school board of a tract of land known as the Roe Davis site for the purpose of providing a new site on which to build a new high school building; (2) an increase in the amount of the tax levy of the district over the amount limited by the state constitution for the purpose of providing funds with which to construct, furnish, equip and provide transportation for a new high school building on a new site; (3) the contracting of a bonded indebtedness in the amount of $450,000 for the purposes stated in (2). The election was duly and regularly held, and all three proposals were carried by a majority of the votes cast, but each of them fell short of a two-thirds majority.

Since the election the board has offered the bonds so authorized for sale. It is conceded that a majority vote is sufficient to authorize issuance of bonds (ORS 328.230) and the legality of the bond election procedure is not questioned.

The plaintiffs contend that the case is governed by ORS 332.150, which prescribes the procedure for holding a school meeting election in a "regular" school district upon the question of "selection, purchase, exchange or sale of a schoolhouse site, or the erection, removal or sale of a schoolhouse," and provides that "a vote of two-thirds of the voters present and voting at such meeting is required to order the *removal of the schoolhouse.*" (Italics added.) The italicized phrase was construed in *Lumijarvi v. School Dist. No. 25,* 112 Or 344, 350, 229 P 684, as meaning "the change of the location of a schoolhouse, whether the building is removed or whether a new building is erected on a new site to take the place of an old one." As the complaint alleges and the demurrer admits that it is the intention of the defendants to abandon the use of the present site and the buildings and facilities thereon, it is the view of the plaintiffs that what is proposed to be done by the board is "the removal of the schoolhouse," and that ORS 332.150 is, therefore, applicable.

Plaintiffs' contention derives from the following provisions of the union high school law:

"All laws governing first class and regular school districts and officers apply to union high school districts and officers so far as applicable." ORS 335.210.

" 'Regular school district' means all districts organized by the district boundary board." ORS 335.205 (2).

As originally enacted ORS 335.210 contained no reference to first class school districts. Or Laws 1907, ch 101, § 19. Prior to its amendment by the inclusion therein of first class school districts (Or Laws 1945, ch 119), we construed these provisions to mean that, where the regulation of a particular matter is not found in the union high school law, it is to be supplied by the applicable regulation in the law governing regular school districts. *McKinnon v. Union High School Dist. No. 1*, 116 Or 543, 548, 241 P 386. Plaintiffs assert there is no regulation in the union high school law prescribing the manner of conferring authority on the board to remove a school, and therefore that the provisions of ORS 332.150 above referred to must be applied.

The defendant, on the other hand, place their reliance on ORS 335.450, which reads:

"The union high school board shall select and purchase necessary land for a school site, when bonds for a new school building have been legally authorized at a legally called meeting in the union high school district, and pay for the same out of funds authorized in such bond issue or from other funds available for that purpose. When legally authorized, the board shall secure land and cause to be erected thereon a suitable building."

The defendants construe the first sentence of the foregoing section as authorizing the board to select a school site and erect a new school building thereon once bonds for that purpose have been legally authorized.

The history of the union high school law throws light on the question:

As originally enacted, § 15 (1), ch 101, General Laws of Oregon 1907, provided that one of the duties

of a union high school board shall be "when legally authorized [,] to secure land and cause to be erected thereon a suitable building." (An amendment was adopted in 1911 adding a comma after "authorized.") Oregon Laws 1911, § 5, p 81. As the law then stood, it is reasonably clear that it was necessary to go to the regular school district law in order to determine the source of such authority, for there was no provision of the union high school law stating what "legally authorized" meant in that context.

In 1935 § 15 (1) of the 1907 Act was amended so as to read:

> "*To select and purchase necessary land adjoining the existing school site, when bonds for a new school building have been legally authorized at a legally called meeting in the union high school district,* and pay for the same out of funds authorized in such bond issue, or from other funds available for that purpose. When legally authorized, to secure land and cause to be erected thereon a suitable building." (Italics added.) Oregon Laws 1935, ch 394, § 1.

The section (now ORS 335.450) assumed its present form, as set out above, through the adoption of an amendment in 1953 which omitted the words "adjoining the existing school site." Oregon Laws 1953, ch 147, § 1. As a result of this amendment the duty and power to select and purchase necessary land for a school site when bonds for a new school building have been legally authorized is not limited to land adjoining the existing school site, but extends to land anywhere in the district.

■ It seems to us that the meaning of the statute, particularly in view of the legislative history which we have traced, is quite clear. In the beginning, as pre-

viously stated, the union high school district law did not cover the subject of the acquisition of land and erection of a school building, except to the extent found in § 1 of the 1907 Act, and the applicable provisions of the regular school district law, therefore, governed. Then, in 1935 the district school board was empowered to select as a site for a new school land adjoining the existing school site when bonds for a new school building should be legally authorized. It would be idle to contend that the exercise of this power was intended to be made contingent upon the vote of the electors on the question of selection of a site. All that was needed was authorization of the bond issue for that purpose. The statute so said. No other construction is possible. Now, when in 1953 the limitation "adjoining the existing school site" was removed and the duty of the board to select a new site was extended so as to permit its exercise with reference to land anywhere in the school district, no other change was made in the language of the section, nor was there any change in meaning, and it follows that it was the intention to authorize the exercise of the larger power on the same terms as had been prescribed for the former: that is to say, that such power to "select and purchase land for a school site" comes into existence whenever bonds are voted for the purpose of acquiring a new school site and erecting a school building thereon.

■ Plaintiffs contend that this construction results in rendering meaningless the second sentence of ORS 335.450, which reads: "When legally authorized, the board shall secure land and cause to be erected thereon a suitable building." We think that the argument is not sound because the quoted sentence and the first sentence of the section relate to different things. The latter authorizes a school board, when bonds have been

voted for a new school building, not only to *purchase* land for a school site but also to *select* such land. The use of the word "new" in the provision plainly implies that this is an authority to be exercised where there is a school building already in existence. But the second sentence deals neither with the selection of a site nor with the erection of a "new" school building in that sense. It must be remembered that this sentence has been in the statute from the beginning. Under the 1907 Act the site was required to be specified in the petition which initiated the proceeding for consolidation (General Laws of Oregon 1907, § 3). If it was proposed to transfer the site of a school building belonging to a regular school district to be included in the consolidation, an election in the district where such site was located was provided for in which the voters of such district voted upon the question of transfer of the property to the union high school district. Id., § 4. Since 1907 there have been changes in these provisions, but it is still the law that the site must be specified in the proceedings for the formation of a union high school district, whether it be a site on which one or more of the districts proposed to be consolidated maintains a standard high school (ORS 335.220-335.270), or whether none of the districts proposed to be consolidated maintains a standard high school (Id., 335.285).

It follows that, whenever a union high school district is formed in which the site specified in the proceedings is not one on which a standard high school is maintained, the board is under a duty "to secure the land"—not to select it, for the selection has already been made—and to erect a suitable building thereon. It is certain that the first sentence of ORS 335.450 does not apply to a situation of that kind,

and we can find no other provision in the union high school law than the second sentence of that section which does apply to it. And, even though it might be necessary to go to the regular school law for implementation of such authority, what we have said sufficiently demonstrates the erroneousness of the contention that the effect we give to the first sentence of ORS 335.450 leaves the second sentence thereof as a useless appendage in the statute.

■ We conclude that the first sentence of ORS 335.450 contains a complete delegation of power to the district board to select land on which to erect a new school building and to defray the cost thereof out of the proceeds of the sale of bonds which have been duly authorized by vote of electors of the district. That the board intends, as alleged in the complaint, to abandon the existing site and school building is a matter of no moment, for that is a power necessarily implied from the power expressly granted. *Crow v. Consolidated School Dist. No. 7,* (Mo App) 36 SW2d 676, 678; *James v. Gettinger,* 123 Ia 199, 200, 98 NW 723.

■ The contention of the plaintiffs that ORS 335.460 is not a grant of power, but, rather, a definition of duty, is without merit, for a command of the legislature to a public official to do an act carries with it by necessary implication the legal power and authority to do what is commanded. *Chadwick v. Earhart,* 11 Or 389, 391, 4 P 1180. As the court said in *Commonwealth v. Anthes,* 71 Mass (5 Gray) 185, 252, "What it is a man's duty to do, he has the rightful power to do."

■■ We see no force in the argument of the plaintiffs based on ORS 335.460, which, so far as pertinent, reads:

"(2) When authorized by a majority vote of the legal voters present at any legally called meet-

ing in a union high school district, the board * * * may contract a district debt for the purpose of building a school building * * *, or for the purchase of land for school purposes, issue negotiable interest-bearing warrants and fix the payment for the same. * * *

"(3) The board shall call a bond election, when petitioned so to do, in accordance with the provisions of the bonding Act for bonding regular school districts."

It is said that this statute "deals with the authority to contract a bonded indebtedness." It deals with two subjects: the authority to contract a district debt to be evidenced by negotiable interest-bearing warrants, and the authority to issue bonds. The latter is itself authority to contract an indebtedness. *McBee v. School Dist. No. 48,* 163 Or 121, 141-142, 96 P2d 207. "Warrants are general orders payable where funds are found and provision is made that they shall be paid in the order of presentation, but bonds are obligations payable at a definite time, running through a series of years, payable on maturity, independent of any presentation." 11 CJS 398-399, Bonds § 2. While we held in the McBee case, construing a statute similar to ORS 335.460 that "the difference between a warrant and a bond is narrowed, if not closed," yet that section itself recognizes a distinction, at least in respect of the procedures governing the creation of the two classes of securities. See ORS 328.205-328.220. The inclusion in ORS 335.460 of the direction to the board to call a bond election when petitioned so to do clearly indicates that the authority to issue warrants was not to be taken as exclusive. We can find nothing in this section which in any way tends to support the position of the plaintiffs.

It is evident that the legislature has in its wisdom

concluded that in the case of union high school districts the ends of efficient administration will be better served if the power to make a selection of a site, when a new location for a high school building seems to be necessary or desirable, is committed to the discretion and judgment of the board charged with responsibility in governing the affairs of the district, instead of submitting the question to popular vote. To accomplish that purpose the amendment to the original union high school law was adopted as it appears in ORS 335.450. If that is not the interpretation to be placed upon the first sentence of the section then we are at a loss to find the reason for its enactment.

The decree of the circuit court was correct and will be affirmed.

LATOURETTE, J. did not participate in this opinion.